UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ERIC ROMAN POWELL,

        Petitioner,

                                          CASE NO. 05-CV-71345-DT
v.                               JUDGE DENISE PAGE HOOD
                                    MAGISTRATE JUDGE PAUL J. KOMIVES

CAROL R. HOWES,

        Respondent.[1]

_____/


**REPORT AND RECOMMENDATION**


*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.   *Prosecutorial Misconduct (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     E.   *Fair Cross-Section Claim (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     F.   *Recanting Witness (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     G.   *Evidentiary Claims (Claims IV & V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
     H.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

\*      \*      \*      \*      \*


I.      <u>RECOMMENDATION</u>: The Court should conclude that an evidentiary hearing is necessary to resolve petitioner's second habeas claim (alleging a denial of his right to trial by a jury drawn from a fair cross-section of the community), and accordingly should appoint counsel for petitioner and conduct an evidentiary hearing on the claim. With respect to petitioner's remaining claims, the Court should deny petitioner's application for the writ of habeas corpus.

_____

     [1]By order entered this date, Carol R. Howes has been substituted in place of Paul H. Renico as the proper respondent in this action.

II.      REPORT:

A.      *Procedural History*

1.      Petitioner Eric Roman Powell is a state prisoner, currently confined at the Lakeland Correctional Facility in Coldwater, Michigan.

2.      On November 9, 2001, petitioner was convicted of one count each of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; armed robbery, MICH. COMP. LAWS § 750.529; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Kent County Circuit Court.  On December 17, 2001, he was sentenced as a third habitual offender, MICH. COMP. LAWS § 769.11, to concurrent terms of 16½-75 years' imprisonment on the assault and robbery convictions, and to a mandatory consecutive term of two years' imprisonment on the felony firearm conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE PROSECUTOR COMMITTED REVERSIBLE ERROR WHEN SHE ARGUED TO THE JURY IN CLOSING THAT IF THE JURY FAILED TO CONVICT DEFENDANT THE "LAW OF THE STREETS" WOULD "WIN."

II.      WHEN KENT COUNTY HAS ACKNOWLEDGED PUBLICALLY THAT BECAUSE OF AN ERROR IN ITS COMPUTER SYSTEM, NEARLY SEVENTY-FIVE PERCENT OF THE COUNTY'S ELIGIBLE JURORS WERE BEING EXCLUDED FROM JURY POOLS DURING THE TIME WHEN JURORS WERE SELECTED IN THIS CASE, AND THEY WERE BEING EXCLUDED IN A MANNER THAT RESULTED IN AN UNDERREPRESENTATION OF AFRICAN-AMERICANS, DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A JURY DRAWN FROM A VENIRE REPRESENTATIVE OF A FAIR CROSS-SECTION OF THE COMMUNITY.

III.      WHEN DEFENDANT MADE AN OFFER OF PROOF THAT THE COMPLAINANT RECANTED HIS IDENTIFICATION TESTIMONY, DEFENDANT IS ENTITLED TO A REMAND TO ESTABLISH THAT RECANTATION ON THE RECORD AND MOVE FOR A NEW TRIAL.

2

IV.     THE TRIAL COURT ABUSED ITS DISCRETION WHEN, OVER
        DEFENSE OBJECTION, IT PERMITTED A POLICE OFFICER TO GIVE
        HIGHLY INFLAMATORY [sic] HEARSAY TESTIMONY.

V.      THE TRIAL COURT ABUSED ITS DISCRETION WHEN, OVER
        DEFENSE OBJECTION, IT PERMITTED A POLICE OFFICER TO GIVE
        HEARSAY TESTIMONY THAT THE COMPLAINANT SAID HE DID
        NOT WANT TO PURSUE THE CASE OR TESTIFY AT TRIAL WHEN
        SUCH TESTIMONY UNFAIRLY PREJUDICED DEFENDANT.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

See *People v. Powell*, No. 239310, 2003 WL 22976107 (Mich. Ct. App. Dec. 18, 2003) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan
Supreme Court.  Petitioner also raised two additional claims: (1) denial of his right to testify in his
own defense, and ineffective assistance of counsel in connection with the decision not to testify; and
(2) denial of a fair trial based on the cumulative effect of the errors at his trial.  The Supreme Court
denied petitioner's application for leave to appeal in a standard order.  *See People v. Powell*, 471
Mich. 865, 683 N.W.2d 675 (2004).  The Supreme Court subsequently denied petitioner's motion for
reconsideration.  *See People v. Powell*, 471 Mich. 922, 688 N.W.2d 830 (2004).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus
on April 7, 2005.  As grounds for the writ of habeas corpus, he raises the five claims that he raised
in the Michigan Court of Appeals.

6.      Respondent filed her answer on October 12, 2005.  She contends that petitioner's first
two claims are barred by petitioner's procedural default in the state courts, and that his remaining
claims are not cognizable on habeas review.

7.      Petitioner filed a reply to respondent's answer on November 21, 2005.

B.      *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized in

petitioner's brief on appeal in the Michigan Court of Appeals:

The prosecution said that Eric Powell shot Jonathan Bowman on the street as Mr. Bowman was in the process of selling drugs to Eric Powell and Nicholas Seals. Defendant Powell said that he was not involved in the shooting, and that Jonathan Bowman had made inconsistent statements concerning Mr. Powell's involvement.

Nicholas Seals testified that he ran into his friend Eric Powell on the evening of March 23, 2000, and Powell asked where he could get some marijuana. They then saw Jonathan Bowman, from whom Mr. Seals had purchased marijuana in the past. They were in the process of buying a $20 bag of marijuana from Mr. Bowman when Powell pulled out a gun and directed Bowman to empty his pockets, which Bowman did (T III 6-10). Powell told Seals to take Bowman's coat and told Bowman to get into Bowman's car, which Bowman refused to do. Defendant Powell then fired his gun at Bowman. Bowman ran in one direction and Seals ran in another. As Seals was running, he heard two more shots (T III 10-12). When he first spoke to police, Seals did not tell the truth about what had happened, but Seals testified that at trial he later did tell the truth, and was offered a plea to possession of marijuana and providing false information to a police officer (T III 18-19, 21). He said that he agreed to testify at this trial because of the plea bargain (T III 26).

Jonathan Bowman testified that on the evening of March 23, 2000, he was in the neighborhood where he normally hung out and sold marijuana (T III 58). After Nicholas Seals called to him, Mr. Bowman walked over to where Mr. Seals and Defendant Powell were standing. He agreed to sell them some marijuana. Mr. Bowman testified that he laughed when he first saw a gun in Powell's hand because he knew Powell and they had never had problems with each other. After Powell directed Bowman to remove his coat, Bowman threw the coat to Seals at Powell's direction, but when Powell directed Bowman to get in his car Bowman refused and began to run. As he was running, he was shot in the back. He thought he heard five to six shots in all. He ran into a store where he gave the store owner $2,000 to hold for him (T III 59-61, 63, 66).

Mr. Bowman said that he first told the police that he did not know who shot him. Then he looked at some photographs and picked out two other people, specifically telling the police that Eric Powell was not involved in the shooting (T III 87-88, 90). He testified that he did not cooperate with the police because he was planning his own retaliation against Mr. Powell and because he did not want to admit to the police that he sold dope (T III 100, 105). Charges involving drugs and carrying a concealed weapon were pending against him when he was shot, but Bowman testified that he made no deal for his testimony against Defendant Powell. However, he also testified that two to three weeks before this trial began, he entered into an agreement that would require him to spend only one year in the county jail on the case or cases that had been pending against him at the time of the shooting (T III 81-83, 85). Mr. Bowman testified that he had four prior convictions for providing false information to the police and one for attempted receiving or concealing stolen property (T III 85).

The officer in charge of the case, Detective Erica Clark, confirmed, over a

4

hearsay objection, that Jonathan Bowman initially stated that he did not know who shot him and that he was not interested in pursuing the matter. However, on April 10, 2000, Mr. Bowman appeared at the detective unit, said he had decided to cooperate, and provided the names of Eric Powell and Nicholas Seals (T III 135-136, 142-143).

On April 26, 2000, the police arrested Mr. Powell at his mother's home, where he was hiding in a bedroom closet (T III 125, 128).

Also on April 26, after Nicholas Seals had been arrested, Detective Clark spoke with Seals and told him, "You can help yourself – I can't help you much unless you tell us the truth." However, Detective Clark testified that she made no deals with Seals (T III 145-146). Seals admitted buying drugs from Bowman, but denied being involved in the armed robbery (T III 151). The detective testified that Seals reported that after the shooting he said to Defendant Powell, "Hey, tell them I didn't know this was going down, I was just buying drugs (T III 160).

Crime scene technician Dean Garrison testified that when he examined the scene after the shooting he found Jonathan Bowman's car keys on the sidewalk approximately fifteen to twenty feet away from his car (T II 87). Fingerprints were lifted from the car, but they did not belong to Defendant Powell (T III 110).

Def.'s Br. on App., in *People v. Powell*, No. 239310 (Mich. Ct. App.), at 1-3.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-

132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst

other amendments, the AEDPA amended the substantive standards for granting habeas relief by

providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

5

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the

benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Prosecutorial Misconduct (Claim I)*

Petitioner first claims that the prosecutor committed misconduct when, during closing argument, the prosecutor stated:

> It's not been a very long trial, but it kind of seems like it right now, doesn't it? It takes it out of you a little bit – you guys, the judge, the parties.  And it's tougher when you've got somebody like the Defendant who cares – or doesn't even bother, doesn't even think about it, and he's about to, at 25, take out a gun and shoot somebody multiple times that he knows in a residential neighborhood without even worrying about the consequences.  That's because he knows there are two separate laws.  And you got a taste of that in this case if you didn't already know it in your own life.  There's a law of the people of this county and there's a law of the street, and they're separate by they exist.  And the longer you sat there this past week, I think you got a taste of that.

Trial Tr., Vol. IV, at 8-9.  Later, during rebuttal argument, the prosecutor continued on this theme:

> Base [the verdict] on the evidence and the law.  And the judge will give you the law.  It will be detailed.  You'll know exactly what you're dealing with.  Because the alternative is he wins.  The law of the street wins.  That's the alternative because the evidence and the law will show if you apply it correctly, that he's guilty as charged of all three counts.

*Id*. at 29-30.  Petitioner contends that the prosecutor's comments were an improper appeal to the

jury's sense of civic duty.  The Court should conclude that petitioner is not entitled to habeas relief on this claim, because the claim is procedurally defaulted.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977).  Habeas review of such a claim is barred "unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted).

Here, petitioner's prosecutorial misconduct claim is barred by petitioner's procedural default in the state courts.  The Michigan Court of Appeals found that a review of this claim was barred by petitioner's failure to object to the alleged prosecutorial misconduct in the trial court.  *See Powell*, 200 WL 22976107, at *1, slip op. at 2 ("[T]he claim that a prosecutor engaged in a 'civic duty' argument must be raised at trial so that court may try to eliminate any prejudice through a curative instruction.  Because defendant failed to object at trial, we review the issue for plain error affecting substantial rights.").  This contemporaneous objection rule was firmly established at the time of petitioner's trial. *See, e.g.*, *People v. Duncan*, 402 Mich. 1, 15-16, 260 N.W.2d 58, 61-62 (1977); *People v. Curry*, 175 Mich. App. 33, 39, 437 N.W.2d 310, 314 (1989).  As the state court clearly and expressly relied on this state procedural rule with respect to petitioner's prosecutorial misconduct claim, habeas review of this claim is barred absent a showing of either cause and prejudice or a fundamental miscarriage of justice.  *See Engle v. Isaac*, 456 U.S. 107, 125-129 (1982) (state contemporaneous objection rule is adequate procedural bar precluding consideration of habeas claims).

Further, this conclusion is not altered by the fact that the Michigan Court of Appeals did

8

consider the merits of petitioner's prosecutorial misconduct claims. It is clear that the court of appeals did so only in the context of determining whether petitioner could establish plain error to overcome his procedural default. "[P]lain error review by the state court does not constitute a waiver of procedural default rules." *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *see also*, *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). Accordingly, the Court should conclude that petitioner's prosecutorial misconduct claim is procedurally defaulted.

As noted above, petitioner can still have the merits of his defaulted claims considered if he shows cause for, and prejudice attributable to, his procedural default. To establish "cause," petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also*, *Coleman*, 501 U.S. at 753. In his reply brief, petitioner asserts that trial counsel's ineffectiveness in failing to object establishes cause for his procedural default. As the Supreme Court has observed, "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" to establish cause. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray*, 477 U.S. at 488-89). In order to constitute cause, however, counsel's performance must amount to ineffective assistance of counsel under the Sixth Amendment. *See id*. "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Id*. For this reason, the ineffective assistance claim which is asserted as cause must itself be both exhausted, *see id*. at 451-52 (discussing *Murray*, 477 U.S. at 489), and not procedurally defaulted, *see id*. at 452-53. Here, petitioner has never presented, in any fashion, his ineffective assistance of counsel claim to the Michigan courts. That claim itself is therefore unexhausted, and cannot be used as a basis to establish cause to overcome his procedural default. *See Lott v. Coyle*, 261 F.3d 594, 608-09 (6th Cir. 2001).

9

Further, even if he could establish cause, petitioner cannot establish prejudice because his prosecutorial misconduct claim is without merit. *See Nunn v. Yukins*, No. 98-2309, 2000 WL 145378, at *1 (6th Cir. Feb. 4, 2000) (no prejudice where defaulted claims were meritless); *Jacobs v. Scott*, 31 F.3d 1319, 1328 (5th Cir. 1994) (same); *Alvarez v. Straub*, 64 F. Supp. 2d 686, 696 (E.D. Mich. 1999) (Rosen, J., adopting Report & Recommendation of Komives, M.J.) (same). For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). To constitute a denial of due process, the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotation omitted).

Here, petitioner cannot show that he was denied a fair trial by these comments. First, the prosecutor did not suggest to the jury that it should base its verdict on emotion or any sense of civic duty. Rather, the prosecutor explicitly told the jury to base its verdict on "the evidence and the law." Trial Tr., Vol. IV, at 29. Second, as the Michigan Court of Appeals noted, "the prosecution's closing argument responded to issues raised by the defense. Defendant placed Bowman's credibility at issue by cross-examining him concerning his initial false statements to the police. The prosecution chose the 'law of the street' argument to explain the victim's inconsistent testimony." *Powell*, 2003 WL 22976107, at *2, slip op. at 2. The comments were thus a response to defense counsel's attack on Bowman's credibility. *See Darden*, 477 U.S. at 182; *United States v. Young*, 470 U.S. 1, 12-13 (1985) (footnote omitted) ("If the prosecutor's remarks were 'invited,' and did no more than

10

respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction."); *United States v. Bond*, 22 F.3d 662, 667 (6th Cir. 1994). Finally, the remark was brief in the context of the entire trial, and the jury was instructed that the comments of counsel are not evidence. *See Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000); *Pritchett*, 117 F.3d at 964.

For these reasons, that Court should conclude that petitioner's prosecutorial misconduct claim is barred by petitioner's procedural default in the state courts, and that he can establish neither cause nor prejudice to overcome his default.

E.     *Fair Cross-Section Claim (Claim II)*

In his second claim, petitioner contends that he was denied a jury drawn from a fair cross-section of the community, in violation of the Sixth Amendment. The basic facts in support of this claim are undisputed, and are set forth in petitioner's brief on appeal in the Michigan Court of Appeals:

> In a story that first appeared in the July 30, 2002, *Grand Rapids Press*, county officials conceded that their own review of their computer system revealed that "nearly 75 percent of the county's 454,000 eligible residents were excluded from potential jury pools since spring 2001" and that "[m]any blacks were excluded from . . . jury pools due to a computer glitch that selected a majority of potential candidates from the suburbs." The chief judge of the Kent County Circuit Court, George Buth, was quoted as saying, "There has been a mistake – a big mistake." The article states that troubleshooters detected the error in mid-July of 2002, and that the error had gone undetected for sixteen months. (Page 1 of 4 of article of July 30, 2002, Appendix A). Jury selection in Mr. [Powell's] case took place on October 15, 2001, so the potential jurors would have been selected well within the period during which the error was occurring.
> The *Grand Rapids Press* articles explain that the error came to light after a Grand Rapids high school teacher and his students conducted a study of under-representation of minorities on Kent County juries. When the teacher reported the class findings to county officials they publicly insisted that the class's calculations were wrong, but when county officials finally conducted an internal study, they were startled to find that those calculations were exactly right. The teacher was quoted as saying that he finally went public with his complaints because "nobody wanted to do anything" about the problem. (Pages 1 and 2 of 4 of article of July 30, 2002, Appendix A).

11

In an article that appeared on July 31, 2002, Kent County Circuit Court Judge H. David Soet was quoted as saying:

> We recognize the fact there could be significant problems. A person is entitled to a jury of their peers. That does not mean a black man has a right to a trial by jury of other black men, but it does mean the right to a jury that reflects a cross section of your community.

(Page 2 of 2 of article of July 31, 2002, Appendix A).

An article of August 2, 2002, explains how the error occurred:

> Although 453,981 names and addresses of eligible jurors from Kent County were on the list provided by the Michigan Secretary of State from driver's license rolls, the computer got instruction to consider only 118,169 names.
>
> After proportionately selecting from all ZIP codes, the computer routinely still needed more jurors. The additional names then were automatically taken from the same abbreviated list, starting at the lowest numbered ZIP codes – which are in the suburbs.
>
> The second search process almost never went further than 49505 – leaving out areas where most of the county's minority population lives: Grand Rapids, Kentwood, Wyoming and Walker.
>
> The report [Kent County Jury Management Report] says the decision to have county workers take over updating the computerized operation in April of 2001 [from private contractors] was made to save time and money.

(Page 2 of 3 of article of August 2, 2002, Appendix A). In the same articles, Chief Judge Buth was quoted as saying that he had asked the State Court Administrator's Office in Lansing to conduct "a thorough review of Kent County's jury selection process." (Page 1 of 3 of article of August 2, 2002, Appendix A).

Def.'s Br. on App., in *People v. Powell*, No. 239310 (Mich. Ct. App.), at 10-11. Petitioner contends that these facts establish that he was denied his Sixth Amendment right to a jury drawn from a fair cross-section of the community. The Court should conclude that an evidentiary hearing is necessary to resolve this claim.

In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). Taking the second issue first, an evidentiary hearing is permitted in this case under § 2254(e)(2). That section provides that, "[i]f the

12

applicant has failed to develop the factual basis of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met.  28 U.S.C. § 2254(e)(2).  Here, an evidentiary hearing is permissible because petitioner has not "failed to develop the factual basis" of his newly discovered evidence and ineffective assistance claims.  In *Michael Williams v. Taylor*, 529 U.S. 420 (2000),[2] the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence[.]"  *Id*. at 430.  Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  *Id*. at 432. Here, petitioner sought an evidentiary hearing on his jury composition claim in connection with his direct appeal, but was denied one by the state courts.  Thus, he did not fail to develop the factual basis of his claim through some fault of his own.  *See Mayes v. Gibson*, 210 F.3d 1284, 1288 n.2 (10th Cir. 2000) (*Michael Williams* standard satisfied where petitioner "raised the need for an evidentiary hearing" on direct appeal and in collateral review proceedings); *Morales v. Coyle*, 98 F. Supp. 2d 849, 893 (N.D. Ohio 2000) (*Michael Williams* standard satisfied where petitioner "sought an evidentiary hearing in state court, which was denied[.]").

Further, the Court should conclude that an evidentiary hearing is necessary to resolve petitioner's claim.  In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim."  *Campbell v. Vaughn*, 209 F.3d

---

[2]This case should not be confused with the *Williams v. Taylor* case discussed in part C, *supra*, in which the Court explained the standard of review under § 2254(d).  Although both cases bear the same caption and were decided on the same date, the petitioners differed in the two cases. For clarity, I refer to the case discussing § 2254(e)(2) by the petitioner's full name–"Michael Williams"–rather than just by "Williams" as is the ordinary citation convention.  *See Watkins v. Miller*, 92 F. Supp. 2d 824, 828 n.1 (S.D. Ind. 2000) (taking same approach).

280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). A brief discussion of the law governing petitioner's fair cross-section claim demonstrates the necessity of an evidentiary hearing in this case.

The Sixth Amendment guarantees a criminal defendant the right to be tried before a jury drawn from a fair cross-section of the community. *See Duren v. Missouri*, 439 U.S. 357, 359 (1979); *Taylor v. Louisiana*, 419 U.S. 522, 526-31 (1975).

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Duren*, 439 U.S. at 364.[3]

The newspaper articles relied upon by petitioner in the state courts and here–themselves containing statements of the court's judicial officers–provide some evidence that a distinctive group in the community–African-Americans–was systematically excluded in general by Kent County's computer error. That there is no evidence that this exclusion was the intentional result of racial animus is irrelevant to petitioner's fair cross-section claim. "In a fair cross-section analysis, purposeful discrimination is irrelevant since the emphasis is purely on the structure of the jury venire." *United States v. Perez-Hernandez*, 672 F.2d 1380, 1384 n.5 (11th Cir. 1982). Thus, "disproportionate exclusion of a distinctive group from the venire need not be intentional to be

---

[3]In his brief, petitioner argues that once the first two elements are satisfied, the burden shifts to the prosecution to show that the underrepresentation is not due to systematic exclusion. However, as the foregoing language from *Duren* indicates, it is petitioner's burden to show all three elements in order to make out a *prima facie* case.

unconstitutional, but it must be systematic." *Randolph v. California*, 380 F.3d 1133, 1141 (9th Cir. 2004); *see also*, *Duren*, 439 U.S. at 368 n.26; *United States v. Weaver*, 267 F.3d 231, 244 (3d Cir. 2001); *United States v. Jackman*, 46 F.3d 1240, 1246 (2d Cir. 1995). Indeed, in *Jackman* the court found systematic exclusion in circumstances strikingly similar to those involved here. *See Jackman*, 46 F.3d at 1242-48. Although this evidence exists in the abstract, what is lacking here is evidence specifically directed at the manner in which the jury venires were composed at the time of petitioner's trial. In order to resolve this claim, the court must "compare the difference between the percentage of the distinctive group among the population eligible for jury service and the percentage of the distinctive group" in the pool from which the jury was drawn. *United States v. Grisham*, 63 F.3d 1074, 1078 (11th Cir. 1995). For example, even assuming that the computer error occurred in the compiling of the venires, if the percentage of African-Americans in the pool from which the venires were drawn was nonetheless representative of the percentage of African-Americans in the county, there would be no fair cross-section claim notwithstanding that some individual African-Americans may have been improperly excluded. The circumstances relevant to petitioner's own case–namely, the composition of the pool from which the jurors were drawn and the composition of petitioner's venire–are simply not reflected in the record before the Court. Thus, an evidentiary hearing is necessary to resolve this claim.

Further, the Court should reject respondent's argument that this claim is procedurally defaulted. It is true that the Michigan Court of Appeals concluded that petitioner had waived this claim based on his failure to object to the composition of the venire at trial. Even if this determination is correct, however, there exists cause to excuse petitioner's procedural default because the factual basis for the claim was not reasonably available to counsel at the time of trial. It is undisputed that the computer error which allegedly resulted in systematic exclusion was unknown at the time of trial.

15

Nor is there any indication that counsel should have been on notice of the error such that he should have challenged the composition of the jury venire sooner. It is true that petitioner has submitted an affidavit of counsel in which he states that, to the best of his recollection, there was only one African-American in the venire from which petitioner's jury was selected. This fact alone, however, should not have spurred counsel to lodge an objection, because it is clear that this fact alone would be insufficient to support a fair cross-section claim. It is well established that "[e]vidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion." *United States v. Horne*, 4 F.3d 579, 588 (8th Cir. 1993); *accord United States v. Williams*, 264 F.3d 561, 568 (5th Cir. 2001); *United States v. Hill*, 197 F.3d 436, 445 (10th Cir. 1999); *United States v. DeFries*, 129 F.3d 1293, 1301 (D.C. Cir. 1997).

Nor is this conclusion altered by the fact that petitioner has not alleged any actual interference by state officials which precluded him from discovering the basis for this claim. In *Amadeo v. Zant*, 486 U.S. 214 (1988), the Court found that the habeas petitioner had cause for failing to raise his fair cross-section claim at trial sufficient to excuse his procedural default. The Court reached this conclusion based on the fact that state officials had actively concealed the unconstitutional practice. *See id*. at 223-24. Because the *Amadeo* court focused on active concealment as a basis for cause, and because there is no allegation of active concealment in this case, the Michigan Court of Appeals determined and respondent argues here that *Amadeo* compels a conclusion that petitioner cannot establish cause. This reading of *Amadeo*, however, ignores the language of that case. It is true that the *Amadeo* Court found cause because of active concealment; it did not, however suggest that active concealment or other direct interference by state officials is the *only* way in which cause can be established. On the contrary, the Court explicitly noted that "'a showing that the factual or legal basis for a claim was not reasonably available to counsel, *or* that some interference by officials made

16

compliance impracticable, would constitute cause[.]'" *Amadeo*, 486 U.S. at 222 (quoting *Murray*, 477 U.S. at 488 (internal quotation and citations omitted)).  Under *Murray* and *Amadeo*, it is therefore clear that "[c]ause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel."  *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002) (quoting *Amadeo*, 486 U.S. at 222).  Because the factual basis of this claim was not reasonably available to counsel or petitioner, there is cause to excuse his procedural default.

Accordingly, the Court should conclude that petitioner's jury composition claim is not barred by petitioner's procedural default in the state court, and that an evidentiary hearing is necessary to resolve this claim.  If the Court agrees with this recommendation, the Court must appoint counsel to represent petitioner, *see* Rule 8(c), 28 U.S.C. foll. § 2254, and the Court may either conduct the hearing itself or refer the matter back to me for that purpose, *see* Rule 8(b).[4]

F.    *Recanting Witness (Claim III)*

Petitioner next claims that the trial court erred in failing to remand the matter to the trial court for an evidentiary hearing relating to his newly discovered evidence of innocence, consisting of Bowman's affidavit which avers that he concocted the story about Powell shooting him to mislead the police.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Thus,

---

[4]Because all of the witnesses presumably reside in the Western District of Michigan, and because petitioner is now incarcerated in that District, upon application of the parties the Court may wish to consider whether the case should be transferred to the Western District in accordance with 28 U.S.C. § 2241(d) (providing that, when two district courts have concurrent jurisdiction over a habeas application, "[t]he district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district for hearing and determination.").

the existence of new evidence, standing alone, is not a basis for granting the writ.  As the Supreme

Court has explained: "Claims of actual innocence based on newly discovered evidence have never

been held to state a ground for federal habeas relief absent an independent constitutional violation

occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993);

*see also*, *id*. at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a

gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred

*constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-

16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of

innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317

(1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention;

the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a

ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-

Reyes*, 504 U.S. 1 (1992).  Thus, the newly discovered evidence, standing alone, provides no basis

for habeas relief.

Petitioner likewise is not entitled to the writ based upon the state trial court's denial of his

motion for new trial based upon the newly discovered evidence.  Because a federal habeas court may

not correct a state court's misapplication of its own law, *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62,

67-68 (1991); *Beck v. Washington*, 369 U.S. 541, 544 (1969), a state trial court's denial of a motion

for a new trial based upon newly discovered evidence is not a ground for habeas relief.  As one court

has explained:

> The criteria for a trial court in granting or denying a new trial are matters of state law.
> As such an incorrect application would not be grounds for federal habeas corpus relief,
> unless the alleged error constituted "a fundamental defect which inherently results in
> a complete miscarriage of justice."

18

*Ward v. Wolff*, 499 F. Supp. 1129, 1131 (D. Nev. 1980) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *see also*, *Buford v. Perini*, No. 85-3862, 1986 WL 18098, at *3 (6th Cir. Oct. 10, 1986) ("[T]he denial of petitioner's post-trial motion [for new trial based upon newly discovered evidence] is simply a matter of state law which cannot serve as a basis for federal habeas corpus relief."); *Subilosky v. Callahan*, 689 F.2d 7, 9 (1st Cir. 1982). Similarly, the trial court's failure to hold an evidentiary hearing on petitioner's newly discovered evidence claim in connection with his postconviction motion warrant habeas relief. Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). Accordingly, the trial court's failure to hold an evidentiary hearing, even if erroneous under state law, does not entitle petitioner to habeas relief. *See Chaussard v. Fulcomer*, 816 F.2d 925, 932 (3d Cir. 1987); *Edwards v. State of Kansas*, 751 F. Supp. 197, 199 (D. Kan. 1990). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.     *Evidentiary Claims (Claims IV & V)*

Finally, petitioner raises two claims challenging the admission of evidence at his trial. Specifically, he contends the trial court erred in admitting the testimony of Detective Clark reflecting hearsay statements of both Seals (Claim IV) and Bowman (Claim V). The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the

application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws).  Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution."  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy."  *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings."  *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.   *Analysis*

At trial, Seals testified that he did not recall asking petitioner to tell the police that Seals was not involved in the crime.  The prosecutor elicited from Detective Clark, however, that Seals had previously stated to her that he had so asked petitioner.  This hearsay statement was used to impeach Seals's previous testimony.  Contrary to petitioner's argument, there was nothing improper in the prosecutor impeaching his own witness.  The Supreme Court has never held that it is unconstitutional for a prosecutor to impeach its own witness, and such impeachment is routine in criminal trials.  *See Escobar v. Senkowski*, No. 02 Civ. 8066, 2005 WL 1307939, at *12 (S.D.N.Y. May 26, 2005); *Davie v. Mitchell*, 291 F. Supp. 2d 573, 602-03 (N.D. Ohio 2003).  Thus, the Michigan Court of Appeals's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  Further, petitioner's claim fails as a matter of the state law upon which he relies.  Under MICH. R. EVID. 607, a prosecutor may impeach its own witness, limited only by the rule that "[a] prosecutor  cannot use a statement that directly tends to inculpate the defendant under the guise of impeachment when there is no other testimony from the witness for which his credibility is relevant to the case."  *People v. Kilbourn*, 454 Mich. 677, 682, 563 N.W.2d 669, 671 (1997).  Here, the relevance of Seals's testimony was not limited to the testimony concerning whether he did or did not ask petitioner to say that he was not involved in the crime.  Rather, Seals was an eyewitness to all of the events which occurred during the commission of the crime, and testified to those events in detail. In these circumstances, the impeachment of Walker by the prosecutor was permissible under Michigan law.  *See Cathron v. Jones*, 190 F. Supp. 2d 990, 999-1000 (E.D. Mich. 2002) (Friedman, J.), *aff'd*, 77 Fed. Appx. 835 (6th Cir. 2003).  Because this impeachment was proper under state law, petitioner cannot show that he was denied a fair trial by the prosecutor's actions.  *See Johnson v. Sublett*, 63 F.3d 926, 931 (9th Cir. 1995).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

The second item of hearsay petitioner contends was improperly admitted was Detective Clark's testimony that Bowman had initially told her that he did not want to testify or pursue the matter of the shooting any further.  The Michigan Court of Appeals held that this testimony was properly admitted as nonhearsay, because it was not offered to prove the truth of the matter asserted. This conclusion was correct.  Bowman's comment to Detective Clark did not assert any fact; it merely indicated his own desire to drop the matter.  Such a statement of desire does not constitute hearsay. Under Rule 801, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MICH. R. EVID. 801(c).  Further, "statement" is defined as "an oral or written assertion[.]" MICH. R. EVID. 801(a).  Here, Bowman's statement that he did not want to pursue the case further is not a "statement" because it does not assert anything; it is merely a request which "contains no assertion.  It is incapable of being true or false.  It is a command, not an assertion, and cannot be hearsay because it doesn't qualify as a 'statement.'" *People v. Jones*, 228 Mich. App. 191, 204-05, 579 N.W.2d 82, 87 (1998).  Because the evidence was not hearsay, petitioner cannot show that he was denied a fair trial by the admission of the evidence.[5]

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his hearsay evidence claims.

H.    *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's jury composition claim

---

[5]I note that petitioner does not contend that the admission of these hearsay statements violated his Sixth Amendment right to confront the witnesses against him.  Such a claim, in any event, would fail, because both Seals and Bowman testified at trial and were subject to cross-examination by petitioner's counsel.  *See California v. Green*, 399 U.S. 149, 158 (1970) ("[T]he Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.").

is not procedurally defaulted, and that an evidentiary hearing is necessary to resolve that claim. Accordingly, the Court should appoint counsel for petitioner and order an evidentiary hearing on the claim in accordance with Rule 8. The Court should also conclude that the state courts' resolution of petitioner's remaining claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus on these claims.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 3/29/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 29, 2006.

s/Eddrey Butts
Case Manager