UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC ROMAN POWELL,

          Petitioner,

                          CASE NO. 05-CV-71345
v.                          HONORABLE DENISE PAGE HOOD

CAROL R. HOWES,

          Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION**
**FOR A WRIT OF HABEAS CORPUS**
**BUT GRANTING A CERTIFICATE OF APPEALABILITY AND**
**IN FORMA PAUPERIS STATUS ON APPEAL**

## I.   Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Eric Roman Powell ("Petitioner") was convicted of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, armed robbery, MICH. COMP. LAWS § 750.529, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Kent County Circuit Court. He was sentenced as a third habitual offender, MICH. COMP. LAWS § 769.11, to concurrent terms of 16 ½ to 75 years imprisonment on the assault and robbery convictions and a consecutive term of two years imprisonment on the felony firearm conviction in 2001.

In prior decisions, the Court denied Petitioner habeas relief on claims concerning the prosecutor's closing argument, the victim's recantation, and the trial court's admission of alleged hearsay statements, granted Petitioner habeas relief on a jury pool fair cross-section claim, and did not rule on a related equal protection claim. The matter is now before the Court on remand from the United States Court of Appeals for the Sixth Circuit for a determination as to whether Petitioner can establish prejudice to excuse his procedural default for failing to raise the fair cross-section claim at the time of trial. Also before the Court is Petitioner's unresolved equal protection claim. For the reasons set forth, the Court finds that both of those claims are barred by procedural default and denies the habeas petition. The Court, however, grants a certificate of appealability so that Petitioner can seek further review in the Sixth Circuit.

## II.   **Facts and Procedural History**

Petitioner's convictions arise from the armed robbery and non-fatal shooting of Jonathan Bowman in Kent County, Michigan on March 23, 2000. At trial, the main prosecution witnesses were Petitioner's friend, Nicholas Seals, and the victim, Jonathan Bowman.

Nicholas Seals testified that he ran into Petitioner around 10:30 that

2

evening when he was walking home and Petitioner asked about purchasing marijuana.  Seals saw Bowman, from whom he had bought marijuana in the past, nearby and they approached him.  They were in the process of buying $20 worth of marijuana from Bowman when Petitioner pulled out a black .32 revolver and pointed it at Bowman.  He told Bowman to empty his pockets and give Seals his jacket.  Bowman gave Seals his car keys and his jacket.  Petitioner then told Bowman to get into the car, but Bowman refused.  There was a tussle and Petitioner fired the gun.  Bowman then ran off around the corner and Seals ran the other way.  Seals heard at least three gunshots. Seals dropped the coat and the car keys on the sidewalk.  Seals ran to his girlfriend's house, which was a few blocks away.  Seals did not have contact with Petitioner after the shooting because he was frightened.  Seals was subsequently apprehended at a friend's house.

Seals admitted that when he first spoke with the police, he denied being involved in the crime and denied knowing anything about it.  In fact, he acknowledged that he denied being at the scene 28 times before finally telling the police what had transpired.  During the interrogation, the police told him that they suspected that Petitioner was the shooter and Seals was only minimally involved in the crime.  Seals denied being threatened by the police

3

or being told to lie.  He said that he identified Petitioner as the perpetrator because it was the truth.  Seals was initially charged with armed robbery, but that charge was dropped in exchange for his plea to the misdemeanor offenses of possession of marijuana and providing false information to a police officer with a three-year maximum sentence in exchange for his testimony.  Seals acknowledged that he did not want to testify because Petitioner was his friend and he was scared.

Jonathan Bowman testified that he went to the neighborhood where the shooting occurred because he had friends and family there and sold marijuana there.  As he exited a store, Nicholas Seals called him over and he approached Seals and Petitioner.  While he and Seals were discussing a marijuana purchase, Petitioner pointed a rusty revolver at him.  Bowman said he laughed at first because he and Petitioner never had any problems.  Petitioner then told him to take his hands out of his pockets, remove his jacket and throw it to Seals, and walk down the street.  Petitioner told him to get into his car and told Seals to get the keys out of his jacket to open the door.  Bowman refused to get into the car.  He saw a spark from the gun and ran zigzag to the store.  He heard five or six shots.  He was shot in the back and bleeding.  He called his girlfriend and told her he had been shot, gave the

4

man at the store $2,000 that he had in his pants pocket to hold for him and asked him to call an ambulance. He went into a back room and waited for help. The bullet went through his diaphragm and liver and into his lung, which collapsed. He required an initial surgery to repair the damage and a second surgery a few weeks later to remove the bullet.

Bowman admitted that he initially told the police that he did not know who had shot him and did not want to prosecute because he wanted to retaliate and he felt like the police would not do an accurate job. When the police questioned him again at the hospital and showed him photographs, he identified two other men, Chuckie and Little O, as the perpetrators and denied that Petitioner was involved, so that he could retaliate against Petitioner and the police would not connect him to it. Petitioner said that he changed his mind about his actions when he went to the police station to pick up his $2,000 and realized that Petitioner's known addresses were close to his daughter's home and he was concerned that she could get caught up in further incidents of violence. Bowman then told the police what happened and identified Petitioner as the shooter. This occurred about four weeks after the shooting. Bowman said that the police did not threaten him or promise him anything to get him to make his statement.

5

Bowman testified that he had a concealed weapons charge and a drug charge pending against him before the incident.  A few weeks before trial, he accepted a deal on those charges which guaranteed him a maximum sentence of one year in jail.  Bowman admitted that he had four prior convictions for providing false names to the police and one prior conviction for receiving and concealing stolen property.

Michigan State Police Lab firearms expert Jeffrey Crump testified that the bullet recovered from the victim was a .32 Smith and Wesson long caliber and that it could have been fired from a revolver.  Grand Rapids Police crime scene technician Dean Garrison testified that he recovered usable fingerprints from Bowman's car.  Grand Rapids Police fingerprint expert Williams Wolz testified that the recovered prints did not match those obtained from Petitioner, Nicholas Seals, William Charles Kirkland, or Darryl Otis Nelson.

Grand Rapids Police Detective Daniel Lubbers testified that he was assigned to a fugitive squad task force and was involved in Petitioner's and Seals' arrests.  The police arrested Petitioner at his mother's house where they found him hiding in a bedroom closet.  The police arrested Seals at another location, an apartment where he was hiding in a bedroom.

Grand Rapids Police Detective Erica Clark testified that she investigated

6

this crime as part of a major case team. When she and another detective spoke to Bowman at the hospital the day after the shooting, he said he did not know who shot him, but that he might be able to recognize the perpetrators if he saw them. When she and another detective spoke to Bowman at the hospital a few days later, he provided three nicknames, Chuck, Little O, and E, but said he did not want to pursue the matter. They subsequently determined that Chuck was William Kirkland, Little O was Otis Nelson, and E was Petitioner Eric Powell. When they showed Bowman photographs, he named Kirkland and Nelson as the perpetrators with Kirland being the shooter and said that Petitioner was not involved. On April 10, 2000, Petitioner came to the police station and asked to speak with her and another detective and said that he wanted to cooperate. He told them what happened and identified Petitioner as the shooter. Bowman said that he previously lied to them because he wanted to take matters into his own hands and retaliate. Warrants were then issued for Petitioner and Seals.

Detective Clark also testified that she participated in Seals' interview after he was advised of his rights and waived them. Seals was not promised anything for his statement. Clark discussed the interrogation techniques that were used on Seals, including making him feel at ease, minimizing his

involvement in the crime, and indicating that the police had more evidence than they had, in order to get him to make a statement. She denied ever telling him that he had to say that Petitioner was the shooter. She testified that the police investigation did not disclose any problems between Petitioner, Seals, and Bowman and it seemed that they were friends. Detective Clark recalled defense counsel asking Seals about whether he told Petitioner to "tell them I didn't know this was going to go down, I was just buying drugs" and Seals answering in the affirmative and stating that Petitioner said that "he couldn't help him out."

After deliberating for a half day, the jury convicted Petitioner of assault with intent to murder, armed robbery, and felony firearm. The trial court subsequently imposed his sentence.

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals asserting that the prosecutor made an improper civic duty argument during closing argument, that minorities were under-represented in the jury pool selection process due to a computer glitch (fair cross-section claim), that he is entitled to a remand and new trial based upon the victim's recantation, and that the trial court erred in admitting alleged hearsay statements. The court denied relief on those claims and affirmed

8

Petitioner's convictions and sentences. *People v. Powell*, No. 239310, 2003 WL 22976107 (Mich. Ct. App. Dec. 13, 2003) (per curiam). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising those same claims, as well as claims concerning his right to testify, the effectiveness of trial counsel as to that issue, and cumulative error. The court denied the application in a standard order. *People v. Powell*, 471 Mich. 865, 663 N.W.2d 675 (2004). The court also denied reconsideration. *People v. Powell*, 471 Mich. 922, 688 N.W.2d 830 (2004).

Petitioner then filed his initial habeas petition with this Court raising the same claims he presented to the Michigan Court of Appeals on direct appeal. Adopting the Magistrate Judge's Report and Recommendation, the Court ordered an evidentiary hearing on the fair cross-section claim and denied habeas relief as to the other claims. *See* Opinion dated May 1, 2007. Petitioner then filed a motion to stay the proceedings so that he could return to the state courts and exhaust additional issues, which this Court granted on September 22, 2008.

Petitioner subsequently filed a motion for relief from judgment with the state trial court asserting that court personnel engaged in racial discrimination during the jury selection process in violation of his equal protection rights.

9

Adopting the State's response, the trial court denied the motion. *People v. Powell*, No. 01-05302-FC (Kent Co. Cir. Ct. Feb. 27, 2009). Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to establish entitlement to relief under Mich. Ct. R. 6.508(D)." *People v. Powell*, No. 290916 (Mich. Ct. App. Oct. 2, 2009) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Powell*, 486 Mich. 927, 781 N.W.2d 848 (2010).

Petitioner thereafter filed a motion to reopen this habeas case, which the Court granted on November 9, 2010. In his supplemental/amended petition, he raised his fair cross-section claim and his equal protection claim arising from the jury pool selection process. Specifically, he raised the following two claims:

I. When Kent County has acknowledged publicly that because of an error in its computer system, nearly seventy-five percent of the county's eligible jurors were being excluded from jury pools during the time when jurors were selected in this case, and they were being excluded in a manner that resulted in an underrepresentation of African-Americans, Petitioner was denied his constitutional right to a jury drawn frm the venire representative of a fair cross-section of the community.

II. In an apparent effort to address the obvious under representation of minorities in Kent County jury venires, jury

10

> department personnel engaged in purposeful racial discrimination in the selection of jurors, thereby violating Petitioner's rights under the Equal Protection Clause.

Adopting the Magistrate Judge's Report and Recommendation, the Court granted Petitioner habeas relief on his fair cross-section claim, but did not address the equal protection claim.  *See* Opinion dated January 31, 2012. Respondent appealed.  While the case was pending on appeal, the Sixth Circuit issued a decision in *Ambrose v. Booker*, 684 F.3d 638 (6th Cir. 2012), *r'hrg and r'hrg en banc den.* (6th Cir. Aug. 29, 2012), a case involving the same Kent County Circuit Court jury selection computer glitch at issue in this case.  In that *Ambrose* decision, the Sixth Circuit ruled that the petitioner established cause to excuse his procedural default of failing to object to the jury selection process because he could not have known of the computer glitch at the time of trial, but rejected the argument that prejudice should be presumed and ruled that a habeas petitioner must establish actual prejudice to excuse the procedural default, even when the underlying error is structural. *Id*. at 649.  In response, Respondent filed a motion for remand asserting that *Ambrose* was controlling.  The Sixth Circuit agreed, vacated this Court's grant of habeas relief, and remanded the case to this Court for further proceedings in light of *Ambrose*.  *See* Case No. 12-1188 (6th Cir. April 15, 2013).  The

parties have since filed supplemental pleadings in support of their respective positions.

Additionally, and significantly, the Sixth Circuit has issued a subsequent decision in *Ambrose v. Booker* (after remand), 801 F.3d 567 (6th Cir. 2015), *r'hrg en banc den*. (6th Cir. Oct. 21, 2015), *cert. den*. *Ambrose v. Romanowski*, _ U.S. _, 136 S. Ct. 2461 (June 13, 2016), and a decision in another Kent County Circuit Court jury selection case in *Garcia-Dorantes v. Warren*, 801 F.3d 584 (2015), *r'hrg en banc den*. (6th Cir. Oct. 21, 2015), *cert. den*. *Warren v. Garcia-Dorantes*, _ U.S. _, 136 S. Ct. 1823 (May 2, 2016), clarifying the actual prejudice standard and discussing its application in the context of these types of cases.

## III.   <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, provides the standard of review for federal habeas cases brought by state prisoners.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

12

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than

13

incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.

14

*Id.* In order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.; see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons

15

before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100.  Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are determined solely by Supreme Court precedent.  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. _, 132 S. Ct. 2148, 2155 (2012) (per curiam).  The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Habeas review is "limited to the record that

was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   Analysis

### A.   Fair Cross-Section Claim

Respondent contends that Petitioner's fair cross-section claim is barred by procedural default because Petitioner did not object to the jury selection process at the time of trial and first raised the claim on direct appeal and the state courts denied relief based upon that procedural default.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

17

The Michigan Court of Appeals rendered the last reasoned opinion on this claim.  In denying relief, the court relied upon the failure to object at trial and determined that Petitioner waived the issue by expressing his satisfaction with the jury. *Powell*, 2003 WL 22976107 at *2-3.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130, 138 (1999); *People v. Stanaway,* 446 Mich. 643, 687, 521 N.W.2d 557, 579 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  A state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review also does not constitute a waiver of state procedural default rules.  *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative.  *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  The Michigan Court of Appeals denied relief on this claim based upon a procedural default – a waiver/failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his or her ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

In this case, as previously discussed by this Court and as reflected by the Sixth Circuit's ruling in *Ambrose*, Petitioner establishes cause to excuse this procedural default because he could not have known of the computer glitch at the time of trial. *See* Opinion dated January 31, 2012 (adopting Magistrate Judge's Report and Recommendation); *Ambrose*, 684 F.3d at 645-49. Accordingly, the Court must decide whether Petitioner can also

establish actual prejudice, or that a fundamental miscarriage of justice has occurred.

For the actual prejudice inquiry, a habeas court must look to the record to determine if the outcome of the trial would have been different. *Ambrose*, 684 F.3d at 652; *see also Ambrose* (after remand), 801 F.3d at 577-78 (ruling that the district court erred on remand when it applied the less stringent jury "less likely to convict" standard, rather than the *Strickland* outcome-determinative standard). The Sixth Circuit explained:

> Courts must consider whether, in light of the underrepresentation of African Americans in the jury venire, 'there is a reasonable probability that . . . the result of the proceeding would have been different.' *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052. Stated another way, courts must ask, is there a reasonable probability that a different (*e.g.*, properly selected) jury would have reached a different result, 'a probability sufficient to undermine confidence in the outcome of the trial.' *Id*.

*Ambrose* (after remand), 801 F.3d at 578; *see also Garcia-Dorantes*, 801 F.3d at 596-97 (setting forth same standard). The Sixth Circuit has also stated that the "most important aspect to the inquiry is the strength of the case against the defendant." *Ambrose*, 684 F.3d at 652.

Having reviewed the trial record, the Court concludes that it is not reasonably probable that a properly selected jury would have reached a different result given the evidence presented at trial. First, the testimony

20

against Petitioner was significant. The victim, Jonathan Bowman, who was familiar with Petitioner, identified him as the perpetrator of the armed robbery and shooting. Witness (and potential co-defendant), Nicholas Seals, who was Petitioner's friend, also identified him as the perpetrator of the crime and corroborated Bowman's version of events, albeit with some variation. Victim identification, especially when corroborated, is strong evidence of guilt. *See Ambrose* (on remand), 801 F.3d at 580 (discussing persuasive strength of victims' testimony). This was not a case of stranger identification since both Bowman and Seals knew Petitioner from the neighborhood. Nor was this a case of cross-race identification as all of the parties involved are African-American. Additionally, Bowman and Seals were acquainted with Petitioner and there was no evidence that either of them had any animus toward him at the time of the crime. To be sure, Seals admitted that he was reluctant to identify Petitioner because he was his friend. While there was no physical evidence linking Petitioner to the crime, there was also no physical evidence excluding him from it. Bowman and Seals both positively identified Petitioner at trial. Although there were variations in their testimony, such as how many shots were fired, the discrepancies were minor, not contradictory as to the identification issue or the basic narrative of the crime, and are insufficient to

undermine confidence in the outcome at trial. *See Ambrose*, 801 F.3d at 580-81 (discussing inconsistencies in witness testimony in that case).

Second, Petitioner's defense was relatively weak given that he focused on attacking Bowman's and Seal's credibility and the lack of physical evidence at the crime scene without presenting an alibi or other evidence to support the theory that someone else committed crime. As the Sixth Circuit has explained, although a criminal defendant is not obligated to produce evidence at trial, "to successfully argue that it is reasonably probable that a different jury would have accepted the defense theory, and thus have reached a different result, a defendant must show that there is some support for that theory." *Ambrose* (on remand), 801 F.3d at 581. In this case, defense counsel did point out Bowman's conflicting statements, Seals' reluctance to implicate Petitioner, and the variations in their testimony. The prosecution, however, provided testimony and arguments to logically counter that defense. Although Seals initially resisted cooperating with the police, he explained that he did not want to get charged for a crime he did not commit and also said that he did not want to testify against Petitioner because he was his friend and he was scared. Seals never implicated someone else in the crime, eventually named Petitioner as the perpetrator, and suffered legal

22

consequences for his own limited involvement in the incident.   Although Bowman initially told the police that he did not know who committed the crime and then identified two other people as the perpetrators, he explained that he did so, not because he was unsure of who robbed and shot him, but because he wanted to take matters into his own hands and retaliate.   While the main witnesses against Petitioner had credibility issues, both provided explanations for their actions which were reasonable and could be accepted by any rational juror irrespective of race.   The strength of the prosecution's case and the relative weakness of the defense case support a finding that it is not reasonably probable that a properly selected jury would have reached a different result at trial.

In contesting the strength of the prosecution's case, Petitioner argues that a "more diverse jury likely would have included members who could appreciate – and inform the rest of the jury about – the manner in which witness testimony might be influenced by overbearing police interrogation practices and the plea bargaining process."   Pet. Suppl. Brf. filed 6/17/13. The Court must reject this argument in this case.   The *Ambrose* court stated, "there is nothing inherent in race or ethnicity that would give a juror special insight" into such matters; rather such insights may derive from a person's

own experience.  *See Ambrose* (on remand), 801 F.3d at 581-82 (rejecting similar arguments regarding jurors' ability to understand a "drug rental" theory of defense).

In support of his actual prejudice claim, Petitioner asserts that the prosecution injected race into the trial by discussing crime in inner city neighborhoods, comparing inner city neighborhoods to more suburban affluent ones, and referencing "the law of the streets" during closing arguments.  However, a review of the record supports a view that the prosecution was trying to place the crime in context, to ensure that the jurors were not swayed by the fact that the victim was a drug dealer, to offer a theory about why Petitioner acted against Bowman, to explain why Bowman and Seals were initially reluctant to cooperate with the authorities and identify Petitioner as the perpetrator, and to refute the attacks on their credibility. The prosecution also discussed the testimony presented at trial and told the jurors that they should base their verdict on the evidence.  The prosecutor's comments did not encourage the jurors to decide the case based upon racial considerations and were not improper, particularly when considered in context.  Defense counsel emphasized that the case was solely about whether Petitioner robbed and shot the victim – and the trial court instructed

the jurors that they should not let any prejudice influence their decision and that they must decide the case based upon the evidence. Petitioner's argument is unavailing and does not support his claim of actual prejudice.

Petitioner also cites to the reports and expert testimony by Dr. Samuel Sommers who opines that racially-diverse juries are less likely to convict than all-white juries. In the similar, previously-decided Kent County jury selection cases, the Sixth Circuit found that Sommers' opinion was not relevant to the actual prejudice standard because it does not support a finding that a different jury would have reached a different result, lacks any individualized assessment of the cases, and relies upon impermissible racial stereotypes. See Ambrose (on remand), 801 F.3d at 579; Garcia-Dorantes, 801 F.3d at 597-98. This Court is bound by the Sixth Circuit's rulings on the matter. For the reasons discussed by the Sixth Circuit, the Court cannot consider Dr. Sommers' testimony as it is not relevant to the actual prejudice inquiry. Given the significant evidence of guilt presented at trial, the Court concludes that there is no reasonable probability that a properly selected jury would have reached a different result. Petitioner fails to establish actual prejudice to excuse his procedural default.

The remaining question is whether Petitioner can demonstrate that a

25

fundamental miscarriage of justice has occurred in order to overcome his procedural default. Neither this Court nor the Sixth Circuit previously addressed this issue. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner asserts that he did not commit the crime and is actually innocent. He also presents an affidavit from Jonathan Bowman, dated February 26, 2003, which recants his trial testimony identifying Petitioner as the person who robbed and shot him. In that affidavit, Bowman states that he "made up" the story about Petitioner to mislead the police and because he was offered a deal on his own criminal charges. He states that he was not robbed, but that he was shot, and that he cannot identify who committed that crime. He claims that he did not tell the truth previously because the prosecutor threatened to give him five years in prison if he did not testify against Petitioner.

26

As an initial matter, the Court notes that Petitioner's own self-serving assertions of innocence are insufficient to support his actual innocence claim. "A reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause." *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (citing cases). This is particularly true since Petitioner did not testify at trial. *See Knickerbocker v. Wolfenbarger*, 212 F. App'x 426, 433 (6th Cir. 2007) (habeas petitioner's polygraph evidence was not persuasive evidence of actual innocence, in part, because he did not testify at trial).

Petitioner, however, does not solely rely upon his own assertions. Rather, he contends that he is actually innocent based upon Bowman's affidavit. Bowman's recantation statements are not "new" given that he gave conflicting statements to police about his ability to identify the perpetrators and about Petitioner's involvement in the crime – and those conflicting statements were disclosed to the jury at trial. Bowman's recantation may not be viewed as particularly reliable. Affidavits by victims and witnesses recanting their trial testimony are viewed with extreme suspicion. *McCray*, 499 F.3d at 574 (citing *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001)); *see also Brooks v. Tennessee*, 626 F.3d 878, 897 (6th Cir. 2010) ("this court views with great suspicion the recantation testimony of trial

27

witnesses in postconviction proceedings").

Viewing Bowman's affidavit with great suspicion, the Court notes Bowman waited 15 months after the trial to recant his testimony and execute his affidavit.  Such a delay in coming forward has been found as suspect. *See, e.g., Lewis v. Smith*, 110 F. App'x 351, 355 (6th Cir. 2004) (district court properly rejected as suspicious recanting affidavit made two years after trial). Bowman executed the affidavit in February, 2003 while he was serving probationary sentences for drug, concealed weapon, and uttering and publishing convictions (for which he was re-sentenced to prison in July, 2003 for probation violations).  *See* Bowman Offender Profile, Michigan Department of Corrections Offender Tracking Information System, http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=238913. Recantations by convicted persons and jail/prison inmates lack meaningful indicia of reliability and are "highly suspicious."  *United States v. Connolly*, 504 F.3d 206, 215 (1st Cir. 2007).  Bowman does not offer any convincing explanation as to why he waited more than a year after trial to recant his trial testimony.  There is scant evidence in the record to corroborate Bowman's claim that Petitioner was not involved in the crime – and his recantation conflicts with Nicholas Seals' eyewitness testimony.  *See, e.g., Teagle v.*

28

*Diguglielmo*, No. 08-2587, 2009 WL 1941983, *3 (3d Cir. June 11, 2009) (unpublished case stating that witness's recantation of trial testimony was suspicious and untrustworthy and "did not, in the absence of additional corroborating evidence or circumstance, meet the standard of reliability contemplated by *Schlup*"); *Allen v. Woodford*, 395 F.3d 979, 994 (9th Cir. 2005) (uncorroborated recantation is "even more unreliable" where trial testimony was consistent with other evidence and recantation was not). Given such circumstances, the Court finds that Bowman's recantation is untrustworthy and cannot establish Petitioner's actual innocence. Petitioner's fair-cross section claim is barred by procedural default and does not warrant habeas relief.

### B.   Equal Protection Claim

Respondent contends that Petitioner's equal protection claim is barred by procedural default because Petitioner waived/failed to object to the jury composition at trial and/or because Petitioner first raised the issue in the state courts on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

As noted, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's

29

procedural rules. *Wainwright*, 433 U.S. at 85-87. Again, procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White*, 431 F.3d at 524; *see also Howard*, 405 F.3d at 477; *Coleman*, 244 F.3d at 539. The last explained state court judgment is used to make this determination. *Ylst*, 501 U.S. at 803-05. If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner first presented his equal protection claim to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* MICH. CT. R. 6.508(D)(3). The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits.

*Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court denied relief on procedural grounds when it adopted the State's response to the motion for relief from judgment in its order denying the motion given that the State argued that Petitioner had waived/failed to object at trial and had not shown cause and prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claim on direct appeal. The state courts clearly relied upon a procedural default to deny Petitioner relief on this claim. Accordingly, the equal protection claim is procedurally defaulted.

Again, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750-51; *Gravley*, 87 F.3d at 784-85. Assuming, without deciding, that Petitioner can establish cause to excuse this procedural default, he nonetheless fails to establish actual prejudice, or that a fundamental

31

miscarriage of justice has occurred, for the reasons stated with respect to his fair cross-section claim. *See* discussion *supra*.[1]  Petitioner's equal protection claim is barred by procedural default and does not warrant relief.  His habeas petition must be denied.

## V.    Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the fair cross-section and equal protection claims contained in his habeas petition as supplemented/amended. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would

---

[1]In pleadings before this Court, both parties have indicated that the procedural default analysis for the equal protection claim would mirror that used for the fair cross-section claim.  *See, e.g.,* Pet. Suppl. Brf. filed 10/21/10, pp. 34-36; Pet. Reply filed 1/7/11, p. 2; Resp. Reply filed 7/1/13, p. 1, n. 1.  Neither party has provided an alternate analysis.

find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When a court denies relief on procedural grounds, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 528 U.S. at 484-85.

While the Court believes that Petitioner is not entitled to habeas relief, the Court nonetheless finds that he makes a substantial showing of the denial of a constitutional right as to his fair cross-section and equal protection claims and that reasonable jurists could debate the correctness of the Court's procedural ruling. Petitioner's claims present constitutional issues worthy of appellate review. Therefore, the Court **GRANTS** a certificate of appealability

The Court finds that Petitioner may file an appeal without prepaying any fees or costs. The Court grants Petitioner *in forma pauperis* status on appeal.

33

Accordingly,

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED**.

IT IS FURTHER ORDERED that this actions is **DISMISSED** with prejudice and this action is designated as **CLOSED**.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  September 30, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager